Your Honor, Frank Holder here for Petitioner, and if I may please the Court. The issue in this case has been a great many words expended. Could you speak a little louder? Yes. It is my belief that this case can be distilled into a question of congressional silence, the interpretation of congressional silence. Is the position of Petitioner echoing Lujan that there is an explicit exception to the definition of conviction? I don't know for a fact. Maybe the mics. How's that? We control this, too, but I can barely hear you. I'll do my best. Let me start again. Maybe if you stood just a little bit over, you'd be equidistant between the two mics. Okay. And they would pick up. And you got to project a little bit. How about a do-over? There we go. I think we're now clear. Thank you. Again, to repeat, the position is in the case there is a very stark opposition between the parties. It is our position that the definition of a conviction, 101-848, does not affect what I'll call the Gavardine-Manrique rule. Echoing Lujan, it is the position of the Ninth Circuit that there is an explicit exception to the definition of a conviction, that it's enmeshed in immigration law for, at the time of the enactment, over 20 years, and that absent clear textual support, that doctrine, if you will, survives ira ira. The position of the government, equally forcefully, is that without clear textual support, it does not survive ira ira. My main problem with the government's position is that they believe that the plain text of the statute controls their position. That can't be the case. It doesn't mean I win, but that can't control. The text of 101-48 doesn't affect this case. This was a conviction under prior law. There's a finding of guilt here. The question will be, is there, in fact, an exception to the definition at 101-848? The reason I think it's clear is that there are other exceptions to the definition of a conviction. The government basically says there are no exceptions. It's rather tautological. The exceptions don't apply because they don't apply. Clearly, a juvenile adjudication is not a conviction. Under the clear terms of the statute, a juvenile adjudication is a statute. A validly vacated conviction, if there was like a Boykin plea infirmity or the matter was vacated on constitutional grounds, that's not a conviction. So the plain text of the statute can't control. But that really isn't a conviction. Right. Although... I mean, if it's set aside, I mean, as opposed to pardoned, I mean, pardoned means you have been convicted, but as an act of... Grace. Executive grace. I mean, it's sort of a king's prerogative exercised by the president or by the governor of showing clemency. And it doesn't mean you weren't guilty to begin with. It means that you are relieved of some of the consequences of having been found guilty. As opposed to vacating a conviction because you're found to be innocent or because it was improperly entered or whatever, then really there is no conviction. Right. Are you saying that there was no conviction at all in this case? I'm not sure I understand your argument. No, it's not so much that there's a conviction. In fact, I hope I made it clear that the... You say there is a conviction, but there's a subject to an exception. Right. There's a subject to... In fact, if you look at the case law, it's clear. Manrique said this is a conviction under current law, but it will not support a finding of deportability. It's the idea that, you know, there's two competing interests here, that the FOFA expresses a clear congressional intent that simple first-time possession defendants who complete an act of rehabilitation don't have a conviction under federal law. Congruent with equal protection, the board and then ultimately the Ninth Circuit said whether it's a conviction or not, it vitiates the immigration consequences of the conviction. So I think that whether it's a conviction or not is not central. In fact, Lujan specifically said we're not defining and we're addressing the new definition of a conviction. We're saying under equal protection, can someone be deported if they had a conviction? It's an equal protection issue. We need a rational basis. So what is your argument as to why there is no possible rational basis to distinguish between federal and state convictions for this conviction? Sure. Two things. Again, we're still in the Ninth Circuit here because the Ninth Circuit has said specifically...  We can change the rules. I'm certainly aware of that. I'm just saying it's highly persuasive that in Gaberdeen, in Lujan, in Dillingham, which actually significantly involved a foreign expungement, we're talking about a very simple concept, the FOFA, simple possession for personal use, no prize. If a state person has the exact same conduct, the idea that you should be treated differently based on the vagaries of each state's statutory scheme is unconstitutional. I mean, it's not rational. Counsel, I have a... Is my mic on? Can you hear me? Just fine. I have a question because when I read this case, I don't know why we are even here deciding whether Lujan remains good law because the BIA in its own decision did not rely on the conviction for simple possession. It relied on a second conviction that was for using or being under the influence of methamphetamine in violation of California Health and Safety Code 11855. It did not analyze the FIFO. I'm reading this and I'm wondering how did we get to a place where now we're talking about overruling Lujan? This petition, it seems to me, actually should have been... Lujan and take the explanation and actually I think your client's petition should be denied on that ground even without undoing all this other law. I understand that, Judge, but you have to look at Nunez-Reyes 1. The initial published case analogized Peretti's where it said... I don't know what you're referring to when you say Nunez-Reyes 1. This was initially a published case saying that the argument of the government was exactly that. Are you talking about the panel decision? Yeah, right. The initial panel decision said this is analogous to FOFA because... Reyes had said that previously. We have another case, Reyes and Nunez. Reyes and Nunez, exactly. So there's at least enough to... Right. Sure. They were decided on the same day. As I understand, Lujan said that Lujan's rationale for its equal protection analysis was based on the fact that they were both simple possession cases. Right. And the panel initially in Nunez-Reyes and Reyes-Gimenez said just because the federal scheme does not criminalize under the influence, it would be irrational to not afford that party FOFA treatment. To be waggish about it, the idea that you have to get arrested before you ingest the drugs seemed irrational. It's the same thing like there's a case, I think it's the Peretti's case, where the federal scheme doesn't criminalize possession of paraphernalia. And a panel said, well, that's irrational. You would be treated worse. Well, that was the case that I wrote. Right. I don't see the crimes in the same category. I don't see the same irrationality. Right. But again, basically, the first panel in Nunez-Reyes... We're not dealing with the first panel's decision necessarily here. We hear everything fresh. So I guess I don't understand. If you'd start with that concept, maybe I don't understand your answer to Judge Wardlaw's question. Why? Well, we'd sort of be revisiting Nunez-Reyes 1. I mean, the government hasn't revisited that issue. They've said we accept Nunez-Reyes 1 as law, but we want to overturn it by addressing Lujan 10 years after the fact. I mean, I'd be happy to argue Nunez-Reyes 1 again, but we're here because the government's arguing solely and exclusively Lujan should be overturned, not that Nunez-Reyes 1 was wrongly decided. I mean, I'm happy to talk about the under the influence and possession issue, but that was decided in Nunez-Reyes 1. Well, why don't you direct your argument to the BIA's decision on the assumption that Nunez-Reyes 1 is not before us right now, that that might be easier for us to deal with? I'd be happy to. Again, it's analogous to the case, no, Cardenas, I'm sorry. The federal scheme, FOFA does not criminalize under the influence for whatever reason. I mean, it's not something we have to address. The problem is, in this case, in a single scheme of criminal misconduct, the petitioner was guilty of possession and under the influence. The argument is that he should be treated FOFA treatment just because of the negative fortuity that he possessed the drugs and also ingested them. It's the same thing as the argument that the feds do not criminalize paraphernalia, but the idea that a person who gets an expungement for a paraphernalia case would be treated worse than somebody who possessed or a person who used a fair amount of heroin is irrational. You made the comment that the government's arguing that the statute is unambiguous, but you said even if it is ambiguous, if it's ambiguous, that's not the end of the inquiry, is that correct? Because we have, if the BIA makes an interpretation and it's reasonable, then you lose on that, correct? Right. So tell me why, even if the statute, just assume for this purpose, just for the purpose of argument that I were to accept that the statute was ambiguous, tell me why you still don't believe. Well, very simply because Nunez-Reyes won. Well, but Nunez-Reyes, when we take something on bond, it's over. The underpinnings of the decision is that it's of a constitutional dimension that to not afford FOCA treatment to a party who had under the influence and possession violates the Equal Protection Clause. It's congruent with the whole line of cases of Aberdeen. Okay, but what if Congress thought we know how the federal courts take care of their first offenders and we're comfortable with that. We don't know how all the state courts do that and we don't have confidence in that. Why couldn't that be a reasonable interpretation as to why you don't treat state convictions the same? Sure. Well, now we're getting into the sister circuits rationale. But again, that's still separate and distinct from Nunez-Reyes. We're getting off track a little bit. But I think, again, that there's a reason the Ninth Circuit case law said that is irrational because it's describing a level of complexity of the FOFA that doesn't exist. This idea that there are, you know, some of the language in the sister circuit cases is that Congress could control the pool of defendants. It's a very simple issue, simple possession, no priors. Well, we recently decided that, I'm sorry, we recently decided Abebe and Bank. And Abebe seems to go against your argument here. Well, Abebe is a little broader. I mean, that's revisiting the equal protection distinction between exclusion and deportation. Here we're talking about the interplay between. Well, but it's talking about equal protection and treating things differently. And it's pretty broad. Counsel, you seem to be determined to talk about the three-judge opinion in Nunez-Reyes. If that's the case, tell us why the special concurrence written by my colleague Judge Graber doesn't cry out for review by this full court and bank. Absolutely. I think we just got off track when we were getting into the distinction between possession and under the influence. The judge's concurrence is perfectly correct. And that's why we're here, because all the other sister circuits, we're talking about the absolute underpinnings of all these cases. Well, if I read her concurrence, it's based simply on our previous line of cases, including Garberding and Lujan, but suggests that we ought to reevaluate that. And what's wrong with that? And why shouldn't we follow her approach? There's nothing wrong with that. I'm more than happy to talk about Lujan, as opposed to the, I'm not sure, the issue of the, again, possession and under influence is a different thing. Sure, the whole reason we're here is because there is abundance. Counsel, if there's a rational distinction between federal convictions and state convictions, then I don't understand how the possession versus under the influence can make any difference. If Congress could decide to exclude from the definition of conviction only federal convictions that meet certain criteria, then it doesn't really matter whether it's just possession or whether it's something different from possession. If it's a state conviction, it simply doesn't follow the exception in the statute at all. So I don't understand if you cross that first bridge that there's a difference, Congress could rationally have distinguished between federal and state. I don't understand how looking at the intricacies of the state convictions could help you. Well, I don't think we're really looking at the intricacies of state law. We're looking at there's a line of cases that say just because the federal criminal statute doesn't criminalize certain things, it would be irrational to not afford FOFA treatment to someone where it's essentially the same type of crime. It's a lesser included, if you will. I mean, exactly because of the paraphernalia case. It's a perfect example. It's truly irrational to treat somebody differently just because the feds don't criminalize it. I mean, that is the ruling of both when he has raised one. Why is it irrational? Well, again, it's the same. It's a different jurisdiction. And the feds don't criminalize it, states do. There's lots of stuff that the states criminalize that the feds don't. Right, but I mean, what we're talking about. I mean, pickpocketing isn't a federal crime unless you do it across state lines. Which would be difficult to accomplish. But there's lots of stuff that the states criminalize. Sure. So what? Well, if we're going to be on this issue, I mean, but certainly Congress is dealing with one particular schema of criminal conduct, which is simple possession. So, I mean, the idea that, again, not to be flippant. The rule most, if you, according to that, you would have to enjoy the FOFA treatment. Make sure you get arrested before you ingest the drugs. I mean, the Lujan, I mean, the Nunez race argument was that it's irrational in the same way that just because the feds don't criminalize paraphernalia, you shouldn't be not treated the same as a FOFA person. I mean, that is what's irrational. That Congress clearly intended to deal with. There's only one sub-schema of possession. It's possession, and people who possess drugs often take them. The other is transportation, sale, and the like. So the idea that a party would be, again, you know, this was in a one count, a two count complaint. The same scheme of criminal misconduct. So, you know, it's our position that to treat that person differently because he was arrested before he did his drugs, not to be flippant, but is irrational, and that was the finding. And then the government has challenged the underpinnings of the whole case by saying Lujan itself. So even if we had only simple possession, it still was wrong. I mean, that is the position of the government, and that's why we had the concurrence by saying that the underpinning of the Nunez-Reyes is wrong, and all the other circuits are right. So, I mean, I think we're revisiting Nunez-Reyes 1 and not addressing the real reason for the en banc hearing, which is the government's challenge, global challenge, to Lujan as opposed to the niceties of Nunez-Reyes 1. So, I mean, I thought we were here more or less to address whether or not Lujan is valid and should be overturned, correct? Well, that's one of the reasons, but, you know, we take the case fresh, so we have to deal with all these issues. So we're setting as though we're in the case of the first instance, so I think you should answer all the questions. Oh, I understand. I mean, I hope I did. I mean, again, the reason Congress in the FOFA is dealing with the simple area of possession, and if a party happened to be under the influence at the same time as he was arrested, that party should get FOFA treatment. Assume that we were to decide in light of the other circuits and the BIA's views of Lujan that it was not good law. Would we even have to get to the definition of conviction? I'm not sure I understand. Well, assume we were to decide that the FFLA simply does not apply under equal protection to state convictions. However, the state defines conviction for analogous crimes. Do we actually need to conduct the analysis of Section 48A and even get to whether it's ambiguous or not ambiguous? Because we're saying we're not going to extend FFLA to state convictions, however the state defines them. Well, I mean, that's precisely why we're here. The Ninth Circuit in prior case law has said. Right, but we can overrule all of that. Of course we can. And there's some on this Court who want to. So would you just answer my question based on, I mean, if we ended up doing that, do we need to get to conviction? No. Clearly, to me the key question here is not so much whether or not there's an exception to the definition of a conviction based on the historically enshrined difference between the FOFA and state convictions and the often shifting definition of a conviction under the immigration laws. What are you looking to? Is it the definitional language in the statute or some other clause? What do we look to to support your argument? Well, we look to a line of cases. You know, what I would call the Andrade, Deris, Work, Gaberdeen, Manrique line of cases that say, clearly and unambiguously, there's an exception to the definition of conviction if a party has a state conviction, simple first-time possession, analogous to FOFA. Even though there is no expressed exception in the statute? In the same way that, you know, juvenile adjudications are convictions. There's a plea of guilt. There's a form of restraint on liberty. It's not a conviction. We don't deport those people. The same thing with a validly vacated conviction. I mean, that's what the line of cases here in the Ninth Circuit say. And, in fact, what the, you know, Gaberdeen didn't really create an equal protection rule. What they did was they clarified existing BIA case law, right? Which is interesting because here you have some, you know, case law created by the government. You would think Congress might have had some deference to another constituent branch of government. But all Gaberdeen said was that it's not clear that, you know, there was one case, the Deris case, where they said it has to be a perfect fit. The state statute has to be a perfect fit to the FOFA. And Gaberdeen said, no, it has to be the conduct should be looked at rather than the vagaries of the state statute. So the reason we're here is that there's two issues, right? There's an exception to the definition of conviction. That's the underpinnings of Lujan, Dillingham, Peretti's and the like. And one of the problems in the sister circuits is they don't even address that. Not a single one of them addresses the fact that there are exceptions to the conviction. And then when they go to the equal protection analysis, they engage in minimal scrutiny. And here we are. But, I mean, that's the key to this case is that there's an exception to the definition of the conviction. That's what those cases stand for. Counsel, I don't think you ever answered Judge Wardlaw's question about the reasoning of the BIA in this case. It indicated that because counsel did not plead down here and that his offense under California Health and Safety Code Section 11,550 is not analogous to any offense that would be covered by FOFA, that notwithstanding Lujan, he loses. What's your response to that? My response to that is, to repeat, it's analogous to the paraphernalia case where it's. I don't think so, by the way. And I am the author of that case. The reason I don't think it's analogous is that paraphernalia is clearly something that is, in a broad, broad sense, it's related to a controlled substance, but it's far less harmful and has far less dangerous consequences to society than a person who's actually ingested meth and is walking around on the street. So I guess I would just say I wouldn't, I just don't accept that those two things are analogous. So I think you should actually answer Judge Smith's question without relying on a conclusion, because I'm sure there are many other people, other colleagues of mine, who probably don't see those things in the same category of potential consequences. The reason this is important is because it may be we don't have to get to the issue for which Janvon has been assembled if this matter is disposed of on another basis by the BIA. I don't think it is. I'm just saying hypothetically, if that's true, isn't that where we find ourselves? I would have to agree, if you were to say that this case could be decided utterly distinct from equal protection in Lujan and Dillingham in the Seventh Sister Circuit. Well, that's what the BIA said, is it not? Sure. Are we standing aloof on, you know, clues? Right, sure. I mean, the position of the government, of course, if this is two convictions, federal first offender is one, the FOFA does not criminalize under the influence, and then the Lujan panel said that's not significant. Again, I'll just repeat, when you're, you know, in the same way, I know there's a difference between paraphernalia and being under the influence, but Congress is obviously carving out an exception for people who simply use drugs. They do it once and they successfully complete their program. The idea that somebody was convicted in the state scheme for simply being under the influence of the drugs that he possessed. See, I don't think you answered my second question either, because, I mean, obviously I'm sitting here trying to narrow the breadth of this case. I am concerned about two arguments that were made in the amicus briefs. One is about reliance on Lujan by many people who have pled guilty, believe under these California state expungement statute, believing that they could get an expungement and would get equal protection and treatment under FFOA. I'm worried about that category of person. I'm also worried about the category of people who are subject to conviction under Section 1326. And so the other sort of narrowing construction that I'm looking at is if we just hold that a rational basis exists for not extending FFOA to state convictions on any one of the three rational bases offered by two other circuits and Judge Graber's concurrence, then we don't need to get to the conviction and start analyzing something which has a lot of unanticipated and possibly unforeseen consequences for a lot of other people elsewhere. Well, but if you find that Lujan is unconstitutional, there's no rational, you know, using the minimal scrutiny test that a conviction expunged under state statute will support a court of deportation, then those people who rely will lose, right? I mean, if you make that finding, if Lujan goes away. I'm wondering if they'll have some other avenue of relief under Padilla or some other reliance argument that could be made individually. I just don't know. That's why I'm asking. Oh, no. Well, I will say this. About all this unanticipated consequences. That's sort of one of the little subspecialties I do. I do post-conviction. The idea that the, you know, the defendant who received constitutionally ineffective assistance and gets a conviction overturned, it's not exactly the black swan, but it doesn't happen a lot. It doesn't occur a lot. Expungements are very different. If you successfully complete your probation, you get matter expunged, just as in FOFA. There will be a massive swath of suffering if that goes away. The reliance is writ large in California, right? You give up your right to trial. You make a deal where you may not plead to another count on the specific reliance. But this is going to be, it will not, it will initiate the immigration consequences of the conviction. People have been relying for 10 years. An exception is not compelled, however, given the fact that some states don't have an expungement process. And so there's a reasonable basis to distinguish, is there not? The reasonable basis is to, I mean, that's the Ninth Circuit case is a state. If a state decides not to, that's within the province of the state. However, given that the feds have created since 1970 the FOFA disposition, it's the only expungement under Federal law, the courts here in the Ninth Circuit have said that based on, and indeed the BIA since the 70s, have said in, you know, for harmony between Federal and state law, based on the supremacy of Federal law, that an analogous expungement should initiate the immigration consequences of that conviction. You've got about a minute and a half left. Do you want to save it for later? I'll save it for later. Okay, we'll hear from the government. Thank you, Chief Judge Kaczynski, and may it please the Court, I'm Holly Smith appearing on behalf of the Attorney General of the United States. In this immigration case, it is undisputed that Mr. Nunez-Reyes pled guilty to methamphetamine offenses and was sentenced to a term of probation. Therefore, under the plain language of Section 101A48A of the Immigration and Nationality Act, he stands convicted for immigration purposes. That renders him ineligible for the cancellation relief that he sought and which it was his burden to show he should benefit from. Therefore, his petition for review should be denied. In doing so, this Court should revisit and overturn its holding in Lujan Armendariz and the cases that sprang from it and relied upon it and extended it. Under Step 1 of Chevron, the Court is to look at the plain language that Congress used. We're dealing here with deferred adjudications. That's the second prong of the definition in Section 101A48A. The first prong, a formal judgment of guilt being entered by a court, is not at issue here. We're dealing with a deferred adjudication. Therefore, the word in Congress used was that there is a finding, or in this case a plea of guilt, and an imposition on liberty. That imposition on liberty in this case was the sentence of probation, and thus Mr. Nunez-Reyes' state proceedings satisfy the plain language of the definition and acted by Congress. He is convicted for immigration purposes. Congress used those words. The argument that silence begets some type of ambiguity is misleading. We look at the words Congress used, not words that they might have used. They specifically said a conviction means. They laid out what they wanted to be the two prongs, when we have a conviction for immigration purposes, and that's actually the end of the analysis. Just because a petitioner would like an exception to be read in on some basis does not create an ambiguity in the language. There is no ambiguity in the language of this definition. Counsel, you made this argument in your brief, and you have repeated it here. You say conviction for immigration purposes. How does that extend to Section 1326 cases? Section 1326 is a criminal conviction. There's an argument by one of the amicus that all the 1326 cases would be affected were we to agree with you. And I question that because that would be federal criminal law defining what a prior conviction would be. Do you have a response to that? As we stated in our brief in addressing 1326, we have a definition here that was enacted by Congress, particularly for immigration consequences, that it has a potential or possible ancillary effect in a later criminal proceeding, does not erase or undo the fact that we look at the plain language Congress used. I'm just wondering, does it apply? I mean, when a federal court sees a federal crime, 1326 is a federal crime, and so then you ask to get an enhanced sentence so that the deportation was following a prior conviction. Well, wouldn't you then have to look at whether there was a prior conviction under the relevant law, like state law or federal law, there was a conviction there? You wouldn't turn back and look at Section 48. The courts that have addressed that within the sentencing context have stated that the sentencing guidelines for 1326 do not contain a definition of conviction, and so they do, in effect, rely upon Section 101A48. So what courts are those? What cases are those? There are sentencing guideline cases in the Second Circuit, and I apologize, Your Honor, I can provide more. I don't think that's necessarily right. That's what I'm trying to understand because one thing I would not like to see us do is open a whole can of worms here. I think the first principle question we have to ask is whether FFOA has to be extended under equal protection principles to state expense convictions, and I'm not sure we need to get further than that. So if I understand your question properly, you would just take part of Lujan, which develops the equal protection rationale. And reject that, as the six other sister circuits have, and Judge Braver did in her concurrence, and then deny the petition and let the question of what law you look to for purposes of 1326 cases be developed by, you know, the district courts who look at those cases. And you are correct, Your Honor, that has been – there are courts who, some of the sister circuits, have addressed the definition but then gone on to sort of, for lack of a better term, reject the equal protection analysis in Lujan. And there are also courts, some of the sister circuits have not gotten to the plain language, have not started from there, and have just addressed the equal protection analysis and rejected it and found rational basis. So, yes, that is one way to go. Counsel, I have another question about the amicus argument. One of the briefs made the suggestion that if the court were to reject the equal protection Lujan analysis, that the rejection applied prospectively only. And I wonder if you would comment on whether you agree or disagree with that suggestion and how that might work in real life, if you were to say, well, this is prospective, what does that actually mean? First, to address the point as to whether the government agrees that it should be prospective only, no, we do not. The cases that appear to be relied upon there are cases dealing with stare decisis. The government is not aware of any case in which a court has held that an interpretation of an immigration statute, even down to an equal protection basis, should be applied prospectively only. And also, when the courts have commented, in particular the Supreme Court has commented on stare decisis as a method for prospective application only, they have said that that is not applicable where the precedent that is being reviewed has been shown to be so clearly wrong that its continued enforcement is, and the word they used was doomed. In effect, the prior interpretation has been shown to be unsound. And given the interpretations by the six other circuits, and we're presently awaiting a decision in a fourth circuit case that have addressed that and found there to be a rational basis for distinguishing between federal dispositions and state dispositions. What about the reliance interest? Pardon me, Your Honor? What about the reliance interest? Two points on that, Your Honor. First, the reliance here is on what should be on what Congress has defined. They have for decades, as was pointed out by the Petitioner's Counsel. Well, but if a court, and specifically this court, says that's what Congress, that's what the statute means, well, that's how it has to be applied. Why? And somebody takes a guilty plea under that understanding. This was a guilty plea case, right? Yes. Okay. So there is Supreme Court case law having to do with reliance interest in taking guilty pleas and the reliance interest on the state of the law. Why wouldn't that apply here? First and most importantly, Your Honor, Mr. Nunez-Reyes and any other alien in his situation who would be in state court, the reliance that he would have to be relying upon would be being put into proceedings under the jurisdiction of the Ninth Circuit. And there is no actual supportable reliance interest based on that, most particularly two cases that have dealt with this issue, the Saleh case and the second case. I'm sorry. Why wouldn't there be a reliance interest? Why wouldn't this lawyer say, well, I've, you know, considered the various, I mean, you need to consider the various consequences of taking a guilty plea, and one of them is your effect on your immigration status. Presumably his lawyer would know that he is not a citizen and, well, should find out, and would say, well, let's research further law to see what effect this guilty plea would have. And they run across Lujan, and Lujan says, oh, don't worry. Not to worry. This is something that if you get it expunged, it's going to be kind of a counter to immigration purposes. He says, great. So it's a guilty plea. Why would, I mean, I'm imagining some sort of scenario like that. Why wouldn't that be a legitimate reliance interest? Because he has no reliance in being placed into immigration proceedings in a court, say, an immigration court, say the one in San Diego or any within the jurisdiction of this court, where Lujan would be applied. The board has specifically had a decision, Salazar-Regino, where they have spoken that they only apply Lujan in the Ninth Circuit, and so outside of the circuit they apply the other circuit's law. And if he were put into proceedings in one of those circuits, he would not come under Lujan. But, Counsel, our premise is that he is in the Ninth Circuit. His lawyer advises him what the immigration consequences would be, and that if he does a plea rather than going to trial, he can complete his probation and he will not be deported. Now that's real-life reliance. But only if he starts from the prospect, Your Honor, of I will come into immigration proceedings in the Ninth Circuit. But why do you say that's an unreasonable assumption? I don't understand that, because every day criminal defense lawyers look at our case law and apply it, and they advise their clients within the Ninth Circuit. The panel had to follow the Ninth Circuit precedent. Your argument seems to be that the criminal defense lawyer and the petitioner should have known better, should have ignored binding precedent in the circuit. Can you explain why a criminal defense lawyer shouldn't rely on the binding precedent of the circuit? Because there's no guarantee that circuit precedent will be applied in his case. If he's in immigration proceedings within any other... Well, if he's living in California, and he's always been in California, he's not moved from California, he's come over from Mexico, why wouldn't that be a fair assumption? That's very speculative, Your Honor. We have two cases in particular within this area of law, the Saleh case in the Second Circuit and Fernandez-Bernal within the Eleventh Circuit. Both of those dealt with California possession offenses, and those aliens were put into proceedings within the jurisdiction of those other circuits. Yes, but that's usually not the case. Usually it happens within the Ninth. You know that from the thousands of cases we have here. I mean, I just can't conceive if you're... I'm trying to be fair, but I don't understand your answer, that if you're a criminal defense lawyer advising a client, you seem to say, well, look, you might be put in proceedings in New York, even though you've lived here all your life, or most of your life. I don't understand why that would be a fair assumption, because the criminal defense lawyer knows the circumstances of his client. How would you put proceedings in another circuit? You'd have to physically travel there, right? Yes, for instance, if they're coming back into or trying to gain entry at a port of entry within that circuit, Your Honor. There's another problem with your logic from my perspective on the issue of prospective application. We're talking only about Ninth Circuit law anyway, so the question of retrospective or prospective application, by definition, can only deal with people who happen to remain in the Ninth Circuit long enough to be put into proceedings here, because we can't affect what the Second Circuit or the Eleventh or anybody else does. So the question, by definition, deals only with those people who are here to begin with. So the fact that they might have been somewhere else doesn't, to me, really respond to the problem. Your other comments did about whether it was on sound or various other things, but I just don't understand the logic of saying that Ninth Circuit laws should be retrospective because they could have moved somewhere else. That just doesn't follow up to me. I just don't know. Can you help me out? Perhaps I confused the issue, and I apologize for that, Your Honor. I was trying to address more the reliance interest as opposed to the stare decisis, prospective application question. So if there is a reliance interest, let's just say for argument that we assume that under St. Cyr and other cases that aliens who relied on our jurisprudence did have a reliance interest. How would that affect this case? Distinguishing facts between what we would be dealing with here and the St. Cyr situation, the court in finding reliance interest in St. Cyr, Your Honor, found that there was no clear indication by Congress that they meant in that case the 212C relief, to withdraw that from aliens who had pled guilty prior to the removal from the statute of 212C. Here we have a clear indication by Congress, first over decades, that they mean for criminal aliens to be removed from the United States. And also within the definition of conviction, we have a clear statement by Congress that it applies to all convictions entered on before or after the date of enactment. So we don't have the same type of lack of clear statement that we have. Look at it, counsel, from the position of the lawyer advising. Is he supposed to advise the Ninth Circuit law is wrong and your client shouldn't rely on it? I mean, that's what you're telling us to say. That, again, Your Honor, doesn't come into – I don't have a clear-cut answer to that. I apologize. It doesn't come into – he can't attack that in immigration proceedings, and so that goes to his relief from a criminal court and what he would be trying to figure out there. So what you're saying is that that would go – if he wants to go back and withdraw his plea and say, my lawyer misadvised me, he would have an opportunity to withdraw his plea, but it really doesn't have a bearing on the immigration proceedings? Is that what you're saying? He can't raise that collateral attack in immigration proceedings. It is within the state court, the criminal court. So your position is it's so obvious that our circuit precedent was wrong that a lawyer would be guilty of ineffective assistance of counsel to advise his client to follow it? No, Your Honor. I don't think I can make that statement on behalf of the government. May I ask you – May I ask you a completely separate question? The BIA, in this case, distinguished Lou Hahn. Do you disagree with the BIA's analysis? The reason that the BIA had to go about it that way was because they had Salazar-Regina, which said they would apply Lou Hahn within the Ninth Circuit, and so their hands were tied. Right, but nonetheless, they distinguished Lou Hahn. They said no. And I understand the government's position, but was the BIA wrong in its analysis in the government's view? In that Lou Hahn could be distinguished in this case? No. We did defend the board's decision initially in our underlying briefing and distinguished – and supported their distinction between a possession offense and a using or being under the influence. And I realize that, you know, we're sitting on bonk, and we tend to deal with broader issues, but in fact the case could be resolved by simply affirming the BIA on the basis of the government's initial position. That is a – Well, denying the petition. Yes, Your Honor. The government does accept that that's a possibility. Is there any way of dealing with the reliance interest on a case-by-case basis if we were to overrule Lou Hahn, send back to the board for the board to consider equitable – sorts of equitable defense to – on the basis of reliance? Such that the – Mr. Nunez-Reyes or aliens in his position would need to present evidence of reliance. That's right. I do think – I think that's a possibility, Your Honor. I'm not 100 percent sure. Does the board – so you don't know whether the board has authority to grant relief on that basis? I'm not – I apologize, Your Honor. I'm not 100 percent sure that they can do that. Are you 90 percent sure? Well, is there any – You say no, no at all, right? Do they have any authority to do that? Is there any statute or regulation you can point to that says they can do that? Because they tend to really follow the regulations pretty closely and without much consideration for equity. I can't point to one at this time, Your Honor. I apologize. I'm probably – I'm sure there's probably not. The question – one question I have is – and you probably don't know the answer to this either – is whether or not, in this case, Nunez relied on the advice of his counsel to plead guilty under the regime that he did, hoping to get a later expungement. There's no evidence of that in the record as it stands now, Your Honor. Could I ask a question on the merits of Lujan? Which I apologize, I can't seem to lay my fingers on right now. In Lujan, as I understand it, we said that, as I recall, that the statute upon which you rely was intended to overrule a decision of the BIA in Oscok, and that Oscok had nothing to do with expungement, and that, therefore, the statute has nothing to do with expungement, and that the conviction can – although it may have existed once, it is gone. Why is that wrong? But the statute had nothing to do with the problem that we have here. It was overruling an irrelevant part of a BIA decision. That assumes – and that is an argument in sort of the layout of the land before the definition of conviction was enacted. It's been laid out that there were two sort of parallel running lines of cases in the criminal arena, one dealing with just straight criminal offenses and one dealing with expungements and drug offenses, and sort of never the twain shall meet. But the way the government views it is that the drug offenses and the expungement offenses are a smaller subset of all criminal offenses, and so they're all subsumed into Oscok. And so when Congress commented on Oscok, it was dealing with all of them. Counsel, you obviously are recommending that we overrule Lujan. Does that mean that we have to separately overrule Garberding as well, or is it impliedly overruled if we overrule Lujan? We would start, Your Honor, with Lujan just sort of seems to have picked up on the Garberding equal protection to apply it as – because Garberding dealt with distinctions between state offenses and state schemes, and so this – to the extent that there was seen that there needed to be sort of that type of analysis between state offenses, that's sort of eliminated if we're looking at federal offenses and state offenses. So it sort of goes sort of hand-in-hand. So I'm not sure – what is it that you would like us to do? As far as – Lujan is – as far as any reevaluation or, for that matter, overruling of prior authority, what is it you're asking us to do? Within the Lujan, the cases that extended it, such as finding anything that relies upon the equal protection basis for not having a distinction between federal and state crimes. So I think Judge O'Scanlan is asking you more specifically. What is your Christmas wish list? Which cases do you want overruled? I apologize for not having them all in front of me. Lujan, the cases that sprang from it, such as Rice, Ramirez-Altamirano, Dillingham, which dealt with the same type of equal protection issue. But what about Garberding? That would be wrapped up in that as well, Your Honor. Could you – excuse me. In your answer to my question a couple of minutes ago, you said that the statute was actually directed toward Lujan. And I just – do you have any legislative history that supports that? Or where – how do we get that? I apologize, Your Honor. I thought we were talking about Oscok and the fact that the Congress did comment on Oscok. Yes, it did. I just wondered if you – because in Lujan we said Oscok doesn't relate to this. And I found that personally kind of persuasive. And Lujan came after the statute. Right. Yeah. Lujan was 2000 and the amendment was in 1996. So your statement is absolutely wrong. It's incorrect. It couldn't possibly be that way. The statute was speaking on Oscok. Right. Yeah. I think you said the statute was directed to Lujan. I apologize if that was my answer. I meant for my answer to be that the statute was commenting on Oscok because Lujan does persuade the statute. It was. That's clear. That is clear. Okay. Thank you. You've got about a minute and a half. Thank you, Your Honor. If I could use my extraordinarily brief time to address Lujan and not the specifics of Nunez-Reyes. I think Judge Schroeder, you're absolutely right. The whole point of our argument is that this text of 101-848 is absolutely silent on post-conviction matters and the Manrique-Gabardin rule. That's an amicus argument. That's our argument. It's our central argument. The legislative history does not discuss post-convictions at all. It simply deals with the third prong of Oscok, dealing with deferred adjudication statutes, as in the Texas case where it can be 10 years long. Our argument is that the Manrique-Gabardin rule survives 101-848 because Congress was not addressing it in the same way they weren't addressing juvenile adjudication for validly vacated. They wanted to do it. They could have done it. They could have said notwithstanding any other provision of law, or they could have said this doesn't apply to vacatores. They did not. So certainly the position of Loujain is that Congress didn't address it. If they wanted to address it, they would have. The equal protection argument is separate, and that's something, unfortunately, we didn't really get to because I understand we got to the specifics of Newt and Ed Reyes and the possession versus under the influence. But our central argument is that the government is wrong to say the text controls. The text does not control.  And our position has been from the beginning. And that's the Loujain point, that Congress did not address it. It survives 101-848. Thank you. Case is argued and submitted. Roger. This court's discussion stands adjourned. Thank you. Thank you. Thank you. Thank you.
judges: Kozinski, Schroeder, B.fletcher, Pregerson, O'scannlain, Thomas, Graber, Wardlaw, Callahan, M. Smith, Ikuta